Donald A. HORWITZ and Wesco
Products Company, Plaintiffs–
Appellants,

v.

ALLOY AUTOMOTIVE COMPANY,
Sheldon Gray and Avrum Gray,
Defendants–Appellees.

Nos. 90–3729, 91–2276.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 11, 1991.
Decided March 19, 1992.

Forrest L. Ingram (argued), John B. Kalish, Cindy M. Johnson, and Anthony V. Ponzio, Kalish & Colleagues, Chicago, Ill., for plaintiffs-appellants.

Peter Flynn (argued), Myron M. Cherry, and Jeffrey M. Wagner, Cherry & Flynn, Chicago, Ill., for defendants-appellees.

Before WOOD, Jr.,* FLAUM and RIPPLE, Circuit Judges.

* Judge Wood, Jr. assumed senior status on January 16, 1992, after oral argument in this case.

HARLINGTON WOOD, Jr., Circuit Judge.

Unfortunately this controversy has grown old in the system and not aged well. It began back in 1980 when Plaintiff Wesco filed for reorganization under Chapter 11 of the Bankruptcy Code. Wesco then filed an adversary complaint which ultimately went to the district court and then came here. *Wesco Products Co. v. Alloy Automotive Co.*, 880 F.2d 981 (7th Cir.1989). In 1984 plaintiffs filed this suit generally based on the same operative facts as the prior adversary proceeding. Later this complaint was amended and the defendants filed a counterclaim. The second amended 118–page complaint in 7 counts sought damages under the Racketeer Influenced and Corrupt Organizations statute, 18 U.S.C. §§ 1961–1968 (Count I), damages for breach of contract (Count II), for imposition of a constructive trust (Count III), for imposition of a resulting trust (Count IV), damages for trademark infringement, 15 U.S.C. §§ 1051–1127 (Count V), for damages for unfair competition under the statutes of the State of Illinois, *Ill.Rev.Stat.* ch. 140, para. 22 (Count VI); and for unfair and deceptive practices under the statutes of the State of Illinois, *Ill.Rev.Stat.* ch. 121½, paras. 262–272 and 311–317 (Count VII). In these latter stages there were fifteen depositions with "thousands" of documents. The defendants filed summary judgment motions supported by four substantial volumes of evidence. This only sketches out the background as a prologue to what happened in the district court to bring this case again.

## I. *The Background of this Appeal*

The district court, adopting the recommendations of the magistrate judge, partially allowed the defendants' summary judgment motions and dismissed Counts I–IV as being barred by res judicata leaving only Counts V–VII and defendants' counterclaim pending for trial. That ruling, partially favorable and partially unfavorable, complicated the situation for plaintiffs. Plaintiffs wanted to take an interlocutory appeal to have this court review the dismissals of Counts I–IV before proceeding further with the trial of the remaining counts.

The issue of what to do arose at a status hearing. The transcript of the conversations between counsel and Judge Bua[1] about the possibilities of an interlocutory appeal under Fed.R.Civ.P. 54(b)[2] or 28 U.S.C. § 1292(b)[3] reads not so much as an ordinary colloquy between court and counsel, but more like the transcript of a meeting of a committee to reform the Civil

---

1. Judge Bua, a most able and distinguished judge, has returned to the private practice of law in Chicago.

2. Fed.R.Civ.P. 54(b) provides:

    (b) **Judgment upon multiple claims or involving multiple parties.**
    When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudi-

cating all the claims and the rights and liabilities of all the parties.

3. 28 U.S.C. § 1292(b) provides:

    (b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.
    (emphasis in original).

Rules.[4] That committee came up with a practical solution agreeable to all, and now we have the case. We need to examine this attempted de facto revision of the Civil Rules.

The solution developed after the trial judge voiced his dissatisfaction with the inhospitable attitude of this circuit to interlocutory appeals demonstrated "many, many times." He mentioned in particular one well known, first-impression case of his which he viewed as one of considerable consequence and public interest but which this court declined to accept on interlocutory appeal. He concluded that if we would not take a case of obvious significance we certainly would not accept an interlocutory appeal in this present case. In Judge Bua's opinion he and the parties would "be spinning our wheels" to try an interlocutory appeal. The only solution the judge saw at that moment was to devise and enter a "final order" which this court would have to take. It did not take judge and counsel for both parties long to develop a foolproof way to accomplish that and force a decision out of this court. It was agreed by all that they would go ahead and enter judgment dismissing Counts I through IV as the judge had already ruled after considering the merits of those counts. The only apparent obstacle, therefore, to the immediate appeal of those dismissed counts which the plaintiff desired to try to save, was the remaining counts the district judge had not dismissed because he had found no reason to dismiss them. It was mutually decided to eliminate that obstacle and achieve the needed finality by allowing plaintiffs to voluntarily dismiss the remaining Counts V through VII, even though they had been held sufficient to state a cause of action. Judge Bua at first wondered why he should dismiss the remaining good counts explaining he "can't dismiss a count just because economically it doesn't make sense for the plaintiff to try the balance of the case." To dismiss those remaining good counts without more, however, was viewed as too final and might jeopardize their subsequent resuscitation. That contemplated voluntary dismissal, it was agreed, would therefore need to be "without prejudice to refiling." Later it was remembered that defendant had a counterclaim pending which was another obstruction to finality. Agreeably, as part of the plan, the defendants graciously agreed to voluntarily dismiss that, but also without prejudice to refiling later. It was clearly not the intention of the defendants to abandon their counterclaim which was not otherwise in jeopardy.

## II. *Rule 54(b) Appeals*

This court's reception of Rule 54(b)[5] and Section 1292(b) interlocutory appeals may not be quite as bad, however, as pictured by Judge Bua. An entry of judgment under Rule 54(b) requires a final judgment "in the sense that it completely disposes of a separate claim for relief or finally resolves all claims against a particular party." *United States v. Ettrick Wood Products, Inc.*, 916 F.2d 1211, 1217 (7th Cir.1990). If there has been such a final judgment, then the district court has the discretion to decide whether to enter judgment on a portion of the case under Rule 54(b). *Id.* at 1218. The district court's decision is then reviewed by this court for abuse of discretion. *See id.* There is language in several of our cases that emphasizes the potential breadth of the district court's discretion. For example, this court has stated that district court "[d]iscretion carefully exercised is rarely upset." *Id.* (citing *Horn v. Transcon Lines, Inc.*, 898 F.2d 589, 592 (7th Cir.1990)).

---

4. A partial transcript of the status hearing is set forth in the Appendix to this opinion.

5. For examples of this court's favorable reception of Rule 54(b) appeals see *Vioski v. Calaveras Asbestos, Ltd.*, 929 F.2d 352 (7th Cir.1991); *Granite State Ins. Co. v. Degerlia*, 925 F.2d 189 (7th Cir.1991); *NutraSweet Co. v. Stadt Corp.*, 917 F.2d 1024 (7th Cir.1990), *cert. denied*, —

U.S. ——, 111 S.Ct. 1640, 113 L.Ed.2d 735 (1991); *United States v. Ettrick Wood Products, Inc.*, 916 F.2d 1211 (7th Cir.1990); *Miller v. Long–Airdox Co.*, 914 F.2d 976 (7th Cir.1990); *Lewellen v. Morley*, 909 F.2d 1073 (7th Cir.1990); *Olympia Hotels Corp. v. Johnson Wax Dev. Corp.*, 908 F.2d 1363 (7th Cir.1990).

This court has, of course, placed some limits on the district court's discretion to grant a final judgment under Rule 54(b). For example, this court has denied review when it felt that the district court was rubber stamping the attorney's request rather than carefully considering the need for a Rule 54(b) order. *Buckley v. Fitzsimmons*, 919 F.2d 1230, 1238 (7th Cir. 1990), *amended, clarified*, Nos. 89–2441, 89–2899, 89–2900, 1990 WL 192085, 1991 U.S.App. Lexis 487 (7th Cir.), *and vacated on other grounds*, — U.S. —, 112 S.Ct. 40, 116 L.Ed.2d 19 (1991), *and modified*, 952 F.2d 965 (7th Cir.1992) [6] (citing *Horn*, 898 F.2d at 592). Moreover, we have denied review when there was too much factual or legal overlap between the claims retained by the district court and those appealed under a Rule 54(b) judgment. *Buckley*, 919 F.2d at 1238. Review was denied in that situation because Rule 54(b) only allows for the bifurcating of separate claims. If there is a great deal of factual or legal overlap between counts, then they are considered the same claim for Rule 54(b) purposes. However, even in this area, if it is a close call this court gives deference to the district court's determination of what constitutes a separate claim under Rule 54(b). *Olympia Hotels Corp.*

*v. Johnson Wax Dev. Corp.*, 908 F.2d 1363, 1367 (7th Cir.1990); *but see Buckley*, 919 F.2d at 1237 (cautioning that there are limits to the district court's discretion to define a separate claim because jurisdiction is a question of power).[7]

It should also be noted in this court's defense that several of the denials of appellate review resulted from the lower court's failure to properly invoke Rule 54(b), and therefore had nothing to do with the Seventh Circuit's alleged reluctance to accept Rule 54(b) appeals. For example, in order to properly invoke Rule 54(b) the district court must expressly find that "there is no just reason for delay," and the court must expressly enter a final judgment. *Ettrick*, 916 F.2d at 1217. Review has been denied where the trial judge failed to follow these steps.[8]

■ Considering that no attempt was made to enter a Rule 54(b) judgment, we cannot create our own jurisdiction by endeavoring to conform the counts at issue on appeal into a Rule 54(b) interlocutory appeal in order to aid the parties.

### III. *Section 1292(b) Appeals*

■ Judge Bua also mentioned his pessimism about a Section 1292(b) interlocutory

---

**6.** The Supreme Court vacated *Buckley* in light of its recent decision in *Burns v. Reed*, — U.S. —, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1990). Buckley's petition for certiorari did not raise a jurisdictional issue. *Buckley*, 952 F.2d at 966. The *Burns* decision has nothing to do with the jurisdictional issues raised in *Buckley*. Instead, *Burns* pertains to the immunity issues raised in *Buckley*. As such, the fact that the Supreme Court vacated *Buckley* does not reflect negatively on this court's application of Rule 54(b). Furthermore, this court did not alter *Buckley's* initial jurisdictional holding when we recently modified the *Buckley* decision pursuant to Supreme Court directive. *Buckley*, 952 F.2d at 966.

**7.** In *Buckley* we denied review of claims that the district court had certified under Rule 54(b). We did not give our usual deference to the district court's decision to enter a Rule 54(b) judgment because it appeared from the record that the district court had reflexively signed the Rule 54(b) order that the parties presented without considering whether the claims retained and those certified for judgment were related. *See*

*Buckley*, 919 F.2d at 1238. As for one of the claims the district court had certified, the *Buckley* court held that certification was improper because that claim was too closely related to claims that the district court had retained. *Id.* at 1237–38. With regard to the certification of the district court's denial of a motion to dismiss, this court held that this denial was not a final judgment as to the plaintiff, and therefore Rule 54(b) certification was inappropriate. *Id.*

In another case, *Horn v. Transcon Lines, Inc.*, 898 F.2d 589 (7th Cir.1990), we denied jurisdiction for several reasons. First, the district court failed to provide reasons for entering a Rule 54(b) judgment. *Horn*, 898 F.2d at 592, 595. Second, there was sufficient factual and legal overlap between the claims certified and those retained to endanger successive appeals. *Id.* at 593. Third, the district court's failure to establish damages meant that the liability judgment was not final for Rule 54(b) purposes. *Id.* at 594.

**8.** *See, for example, Willhelm v. Eastern Airlines, Inc.*, 927 F.2d 971, 973 (7th Cir.1991); *People Who Care v. Rockford Bd. of Education Dist. No. 205*, 921 F.2d 132, 134 (7th Cir.1991).

appeal effort so that attempt also was not made. Three primary factors are necessary for jurisdiction under 1292(b): (1) the issue certified for appeal must involve a "controlling question of law"; (2) there must be "substantial ground for a difference of opinion" as to the application of this question of law; and (3) the claim must be one in which the immediate appeal of this controlling question of law "may materially advance the ultimate termination of the litigation...." 28 U.S.C. § 1292(b).

What the court and parties did not do for themselves we cannot do for them, but we do not want it to be understood that we are hostile to appropriate interlocutory appeals under the applicable rules.[9]

## IV. *Section 1291 Appeal*

■ The parties rely on 28 U.S.C. § 1291[10] to confer jurisdiction by this court. Their efforts to produce an appealable order under Section 1291 must be examined. It is our own threshold and independent obligation to make that determination even though both parties agreeably considered the order to be final and appealable. *In re Cash Currency Exchange, Inc.*, 762 F.2d 542, 545 (7th Cir.1985); *Levin v. Baum*, 513 F.2d 92, 94 (7th Cir.1975).

■ It is often stated that the finality requirement of Section 1291 should be applied practically rather than technically. *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949). If we fail to review the judgment in this present case it is by no means the death knell of this action irreparably harming anyone as was not the case in *Eisen v. Carlisle & Jacquelin*, 370 F.2d 119, 121 (2d Cir.1966), *cert. denied*, 386 U.S. 1035, 87 S.Ct. 1487, 18 L.Ed.2d 598 (1967). Everybody, including the district court, expects to see this case again.[11] Our view does not constitute merely a technical consideration of appeal under Section 1291. Proceeding to trial on the remaining counts along with the counterclaim would not have waived appellate review of the other counts the district court dismissed for cause upon defendants' motion. *Bastian v. Petren Resources Corp.*, 892 F.2d 680, 682 (7th Cir.), *cert. denied*, 496 U.S. 906, 110 S.Ct. 2590, 110 L.Ed.2d 270 (1990). What Judge Bua did for the parties was to dismiss the good counts with leave to later reinstate them so that the counts dismissed for cause could be appealed. *Grantham v. McGraw–Edison Co.*, 444 F.2d 210, 212 (7th Cir.1971). That did not terminate the litigation and no one contemplated that it would. It was not a final order. It makes no difference that the court and the parties may have contem-

9. For some examples of this court's favorable reception of 1292(b) interlocutory appeals see *Johnson v. Graphic Communications Int'l Union*, 930 F.2d 1178 (7th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 184, 116 L.Ed.2d 145 (1991); *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239 (7th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1415, 113 L.Ed.2d 468 (1991); *Long v. Trans World Airlines, Inc.*, 913 F.2d 1262 (7th Cir.1990); *Peterson v. Sealed Air Corp.*, 902 F.2d 1232 (7th Cir.1990); *Alleghany Corp. v. Haase*, 896 F.2d 1046 (7th Cir.1990), *vacated sub nom. Dillon v. Alleghany Corp.*, — U.S. —, 111 S.Ct. 1383, 113 L.Ed.2d 441 (1991); *Bester v. Chicago Transit Auth.*, 887 F.2d 118 (7th Cir.1989); *In re Jartran, Inc.*, 886 F.2d 859 (7th Cir.1989).

But, on the other hand, some efforts at 1292(b) interlocutory appeals have failed for a variety of reasons specified by this court. *See, for example, People Who Care v. Rockford Bd. of Education Dist. No. 205*, 921 F.2d 132 (7th Cir. 1991); *Weir v. Propst*, 915 F.2d 283 (7th Cir. 1990); *Buckley v. Fitzsimmons*, 919 F.2d 1230 (7th Cir.1990), *amended, clarified*, Nos. 89–2441, 89–2899, 89–2900, 1990 WL 192085, 1991 U.S.App. LEXIS 487 (7th Cir.), *and vacated on other grounds*, — U.S. —, 112 S.Ct. 40, 116 L.Ed.2d 19 (1991), *and mod.*, 952 F.2d 965 (7th Cir.1992).

See also *Eisenberg v. United States Dist. Court*, 910 F.2d 374 (7th Cir.1990), where this court denied mandamus but suggested the parties try an interlocutory appeal under 1292(b).

10. 28 U.S.C. § 1291 provides in pertinent part:

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States....

11. This situation is to be distinguished from cases in which the issue is whether an appeal lies by plaintiff after a voluntary dismissal without prejudice under Rule 41. *Cauley v. Wilson*, 754 F.2d 769 (7th Cir.1985). In the present case there is no attempt to appeal that part of the case which was voluntarily dismissed by plaintiffs without prejudice.

plated that, if this court were to accept jurisdiction and affirm the dismissal of Counts I–IV, the plaintiffs might later, decide not to pursue the voluntarily dismissed counts originally held to have stated a cause of action. What this court might do or not do with an appeal cannot make final an order that was not. This court can do nothing unless it has jurisdiction when the case arrives.

We cannot create jurisdiction for ourselves any more than the parties can create it for us by agreement among themselves. As Judge Kanne points out in *Parker v. Freightliner Corp.*, 940 F.2d 1019, 1023 (7th Cir.1991), a plaintiff ordinarily has no right or reason to appeal its voluntary dismissal since plaintiff would have received the relief requested unless the conditions imposed on that dismissal legally prejudices the plaintiff's ability to reinitiate its lawsuit. The difference from the present case is that the present plaintiffs are not appealing the voluntary dismissals. Moreover, there were no conditions imposed on those voluntary dismissals prejudicing plaintiffs' ability to reinstate the counts. In fact, unconditional reinstatement was contemplated. Therefore it may be argued that if the voluntary dismissal of the good counts without prejudice, where reinstatement is contemplated, is not appealable itself as a final order, then that action cannot somehow create appealability for the other counts dismissed for cause.

## V. *The Separate Appeal of Costs*

▮ In addition to the appeal of Counts I–IV we have a subsequent appeal by plaintiffs now consolidated with the first appeal, complaining about Judge Bua's award of costs to defendants in the amount of $20,-896.00. What was originally all harmony and cooperation between the parties in customizing a "final order" for appeal has since seriously deteriorated. To defeat the costs assessment plaintiffs now view that part of the appeal differently. They now argue in their cost brief that defendants are not in fact prevailing parties entitled to costs because "the judge, with input from counsel for both parties, determined to make the judgment on the entire case tech-

nically final but substantially not final by dismissing, with leave to reinstate following appeal, all issues not contained in the appeal of Counts I–IV." That method to achieve appeal, plaintiffs presently point out in trying to shift responsibility for the costs, was originally proposed by the defendants. We note, however, that defendants' idea about how to achieve a final order was quickly embraced by plaintiffs who, after all, were the ones seeking the interlocutory appeal. Defendants respond by pointing out in their cost brief that plaintiffs' costs argument is "down-right dangerous" for plaintiffs in their appeal on the merits. Defendants argue, that because of plaintiffs' contrary position when it comes to costs, they "engage in a flirtation with disaster." The detection by this court of that impending jurisdictional disaster, however, did not need plaintiffs' help. It was apparent on the face of the appeal and should have been predictable.

An argument then follows about how the costs should be divided or assessed in these unusual circumstances. It is obvious that what Judge Bua originally termed a "perfect solution" for all concerned is proving not to be one after all. The parties have created their costs dilemma by their innovative appeal effort. One problem has lead to another. The order assessing costs separately appealed appears on its face to be final so we accept jurisdiction of that much of the case.

The costs were assessed in the district court on the basis of the parties' arrangement which results in this failed appeal. After the failure of that arrangement, there is now no sound basis for the allocation of costs. What may happen next in the district court before a new judge cannot be anticipated, but whatever that may be the costs can be more realistically assessed at that time. The district court's allocation of costs cannot stand. As Judge Ripple wrote in his dissent in *Adams v. Lever Brothers Co.*, 874 F.2d 393, 396 (7th Cir.1989), and to this extent he joined his colleagues, "[t]he 'short cut' of dismissing with leave to reinstate has resulted already in much additional expense and wasted ju-

dicial time" and "much more time will be expended before this litigation is finally terminated." This case illustrates the truth of that observation.

## VI. *Defendants' Counterclaim*

Defendants' counterclaim is or was part of this suit. Its subsequent voluntary dismissal by defendants without prejudice raises an additional issue of finality. We cannot find that Judge Bua issued an order disposing of that counterclaim. There is no judgment. The docket of the district court merely shows that the plaintiffs and defendants filed a stipulation to dismiss the counterclaim "without prejudice." It remains pending without any final disposition by Judge Bua. In *Board of Education of Community Consolidated School Dist. No. 21 v. Illinois State Board of Education*, 938 F.2d 712, 715, n. 2 (7th Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 957, 117 L.Ed.2d 124 (1992), it was held the absence of a district court order disposing of a counterclaim did not prevent appellate review provided the parties could satisfy this court that it was settled. The counterclaim in this case clearly is not settled, only on hold. That alone is enough to defeat our jurisdiction.

## VII. *Conclusion*

We might have overlooked some merely technical problems in this attempted appeal and relied on Judge Bua's exercise of discretion, but the record is clear that the parties and the court worked out a practical appeal arrangement outside the rules. The discretion exercised by Judge Bua is not the discretion contemplated by the rules. It is better for the parties to go back to the district court and try again to straighten this case out. That may affect the allocation of costs based on the original artificial appeal strategies. The requirement of finality and the rules for interlocutory appeals are intended to save judicial resources and the time and expense of litigants, but what happened here is a waste for everyone.

In *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 170, 94 S.Ct. 2140, 2149, 40 L.Ed.2d 732 (1974), the Supreme Court succinctly explained the necessity for finality, "[R]estricting appellate review to 'final decisions' prevents the debilitating effect on judicial administration caused by piecemeal appellate disposition of what is, in practical consequence, but a single controversy." The Court noted that, "[N]o verbal formula yet devised can explain prior finality decisions with unerring accuracy or provide an utterly reliable guide for the future." We do not intend, however, to be critical of court or counsel for trying to figure out a practical and economic way, as they saw it, to move this case along. We can see, as they did, the possibility of some practical and economic benefits to them in their efforts in this case. Were it only a matter of our discretion we might have been willing to help them out, but there are good reasons the rules are the way they are. Their way won't work. The district court in agreeable concert with all counsel cannot favor us with jurisdiction outside the rules. We have to decide cases brought to us on appeal, not evade them, but our authority is circumscribed. We cannot be of service this time. The judgment on the merits is not final and therefore not appealable. The committee's attempted amendment of the rules in case No. 90–3729 is without effect. We therefore have no jurisdiction and that appeal must be dismissed.

The costs judgment in case No. 91–2276 is vacated and remanded. The parties shall bear their own costs in this court.

DISMISSED IN PART AND VACATED AND REMANDED IN PART.

## APPENDIX

Partial transcript of the proceedings in the district court on November 7, 1990:

THE CLERK: 84 C 10909, Donald A. Horwitz versus Alloy Automotive Company. For a status hearing; defendants' motion for dismissal of remaining claims or for a prompt trial; and plaintiffs' motion for entry of final judgment on Counts One to Four.

MR. INGRAM: Good morning, your Honor. Forrest Ingram on behalf of the plaintiffs.

MR. FLYNN: Good morning, your Honor. Peter Flynn for the defendants.

MR. INGRAM: Your Honor ...

MR. FLYNN: Your Honor ...

MR. INGRAM: Go ahead.

THE COURT: I have read your motions. I have read your motions and the responses.

I can never get the Seventh Circuit to take an interlocutory appeal. Okay? And I have made the finding under 54(b) and 1292 many, many times. I did it in the *Shakman* case. Would you believe they would not take the *Shakman* case after I entered summary judgment for the plaintiffs, a case of first impression which decided whether hiring on a political basis violates the Constitution? They wouldn't take it. And because they didn't take it—and I entered the 54(b) order—because they didn't take it, all the parties entered into consent decrees with the exception of three. They suffered that consent decree, and then five, six, maybe seven years later, when we disposed of the last three defendants who did not consent, they said "[*sic*] There is no standing of those plaintiffs to bring this cause of action. Had they taken that appeal and decided it seven years earlier, all the other defendants would not have consented. And then what happened? The Republican Party case, *Rutane v. Thompson*, goes to the Supreme Court, and the Supreme Court says, "[*sic*] Hey! Yes ... hiring on a political basis does violate the constitutional rights.

So, if they don't take a case like that where I make the finding, they are never ever going to take an interlocutory appeal in a case such as this. Okay? We would be spinning our wheels.

So the only alternative we have, as I see it, is if it is economically ... no, it doesn't make economic sense to try the balance of the case. The only alternative is to suffer a dismissal and appeal from my order. Or, if you want a trial, we'll try it next week or two weeks from now. That's your decision.

MR. INGRAM: Your Honor, with respect to the trial, I have a three-week trial starting in Gary, Indiana, on November 26.

THE COURT: And you represent whom?

MR. INGRAM: Plaintiffs, your Honor.

MR. FLYNN: Your Honor, for defendants, our position would then be that we do want a prompt trial if the plaintiffs want a trial at all. We had suggested in our motion that the parties report back to the court within ten days just to make sure that all the discovery issues are disposed of, and so forth, and at that point, we set a trial date for as soon as convenient to the court.

THE COURT: We can set a trial date now.

MR. INGRAM: Your Honor, one other possibility, if on the strength of this motion your Honor entered an order dismissing the last three counts ...

THE COURT: Why would I dismiss the last three counts?

MR. INGRAM: Your Honor, I don't see any good reason except that there is a motion for it, but it would get everything final, and we could take that up on appeal.

THE COURT: I would deny the motion to dismiss the last three counts. I can't dismiss a count because economically it doesn't make sense for the plaintiff to try the balance of the case.

MR. INGRAM: It was just something that ...

THE COURT: I decided that it stated a cause of action.

MR. FLYNN: Well, your Honor, if plaintiff, who seems to be a little unsure about the point, wants to to [*sic*] dismiss them without prejudice so as to go up, I am not going to object to that.

THE COURT: Well, there is the other alternative. If you want to dismiss those counts without prejudice pending the determination of the Seventh Circuit with reference to my adoption of the magistrate's report and recommendations on the other counts, you have got a final and appealable order. They have to take it.

MR. INGRAM: Your Honor, I think that is a good way to go.

THE COURT: Plaintiff takes a voluntary dismissal of the remaining counts of the complaint without prejudice—

MR. INGRAM: Yes, your Honor.

THE COURT: —without prejudice to refiling. Is that okay with you?

MR. FLYNN: That's correct, your Honor.

THE COURT: Stipulated, without prejudice to refiling them depending upon the determination of the Seventh Circuit.

MR. INGRAM: I think that would be economically and legally—

THE COURT: A perfect solution!

MR. INGRAM: —and logically best.

THE COURT: A perfect solution!

MR. INGRAM: Fine, your Honor.

THE COURT: This matter is off our call. Is this a pending case, by the way?

THE CLERK: Yes, Judge.

THE COURT: It's disposed of. Good luck upstairs!

MR. INGRAM: Now, is the final order entered then as of today, your Honor?

THE COURT: It's a final order by virtue of your taking a voluntary dismissal of the remaining counts. There is nothing left. I have dismissed the other counts, so it now disposes of all the matters in controversy between and among all the parties. So it now is a final and appealable order.

MR. INGRAM: So as soon as this order is entered upon the docket—

THE COURT: —you go right upstairs.