**UNION OIL COMPANY OF CALIFORNIA, a California corporation, Plaintiff–Appellant, Cross–Appellee,**

v.

**JOHN BROWN E & C, a Division of John Brown, Incorporated, a Delaware corporation, Defendant–Appellee, Cross–Appellant.**

Nos. 96–2782, 96–2840.

United States Court of Appeals, Seventh Circuit.

Argued April 1, 1997.

Decided Aug. 5, 1997.

Steven R. McMannon, Douglas C. Crone (argued), Tribler, Orpett, Palmer & Crone, Chicago, IL, for Plaintiff–Appellant, Cross–Appellee.

Diane I. Jennings (argued), William T. Weaver, Stephanie A. Burris, Lord, Bissell & Brook, Chicago, IL, for Defendant–Appellee, Cross–Appellant.

Before BAUER, CUDAHY, and MANION, Circuit Judges.

MANION, Circuit Judge.

Union Oil Company of California ("Unocal") sued John Brown E & C, Inc. ("John Brown") for breach of contract, and various tort law claims. All counts were dismissed except for the breach of contract claim. After the parties consented to proceed before a magistrate judge, John Brown moved for partial summary judgment, arguing that even if it had breached the contract, a limitation of damages clause capped Unocal's damages at $332,000. Unocal objected, contending that because John Brown was grossly negligent, the clause did not apply. The magistrate judge rejected Unocal's position and granted John Brown partial summary judgment, capping any damages at $332,000.

Unocal, not wishing to continue with the litigation if damages were so limited, entered into a stipulation with John Brown conditionally settling the case; the agreement provided that if this court affirms the magistrate judge's conclusion that damages are limited, the parties will go their own ways, but if we reverse, they will continue to litigate the breach of contract count. Based on the partial summary judgment and the stipulation, the magistrate judge entered a purported final order. However, because this order is not final, we dismiss for lack of subject matter jurisdiction.

## I. Facts

In April 1989, Unocal and John Brown entered into a "Cost Reimbursable Contract for Engineering, Design, Procurement, and Construction of Unocal's Midwest Polymer Plant" (the "contract"). Pursuant to the contract, John Brown agreed to perform certain engineering, design, and construction management tasks, to procure equipment and materials, and to oversee the installation and construction of a polymer plant for Unocal in Kankakee, Illinois. The contract did not specify a budget or fixed price for the completion of the project, or a definite deadline; rather it estimated total costs at $46.8 million and provided that "[m]echanical completion is scheduled for October 1, 1990." This was later changed to December 1, 1990. The contract also provided that John Brown would receive a fee equal to 1.5% of its

reimbursable home office costs, field construction costs and the cost of bulk material permanently incorporated into the Kankakee plant.

Sometime before September 1990, John Brown represented to Unocal that the project was coming in at the forecasted $46.8 million and that it would meet the revised December 1, 1990 completion date. However, in a subsequent "Authority for Expenditure" dated August 31, 1989, John Brown estimated the total cost of completion at $48.7 million. Unocal approved this revised cost. John Brown later changed the cost to approximately $54 million and changed the completion date from December 1, 1990 to March 15, 1991. According to Unocal, it never approved the revised $54 million cost estimate submitted by John Brown. But, Unocal explains, in the interest of having the plant completed, it paid John Brown for expenditures that it submitted, even those exceeding the $48.7 million authorized. Because of the delays and cost overruns, John Brown agreed it would limit its fee to $415,000, instead of 1.5% of certain contract costs. The plant was finally completed in July 1991.

After the completion of the plant, Unocal filed suit against John Brown in federal court based on diversity jurisdiction. Unocal's complaint alleged five counts: breach of contract; negligent misrepresentation; gross negligence; negligence; and breach of an implied covenant of good faith and fair dealing. John Brown moved to dismiss the negligent misrepresentation, negligence, and gross negligence counts, arguing that those tort counts were barred by the economic loss doctrine, which precludes recovery of purely economic losses in tort. Relying on *Moorman Manufacturing Company v. National Tank Company*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982), the district court granted John Brown's motion and dismissed those counts. The parties then consented to proceed before a magistrate judge. John Brown moved for judgment on the pleadings on the breach of implied covenant of good faith and fair dealing count. The magistrate judge granted John Brown's motion, holding that Unocal's claim failed under California law because Unocal had failed to allege the existence of a "special relationship" between the parties.

That left only Unocal's breach of contract claim. John Brown moved for summary judgment on this claim, arguing that any damages that Unocal could recover under the contract were limited to 80% of its fee, based on section 9.16 of the contract, which contained various limitation of damage provisions. Unocal, of course, maintained that it should be able to recover the full amount of its loss resulting from the breach—over $8 million. The magistrate judge agreed with John Brown, concluding that total damages were capped at 80% of Brown's total fee of $415,000, or $332,000, and entered partial summary judgment in favor of John Brown.

Because the magistrate judge's ruling limited damages to a relatively small amount, instead of proceeding on the merits of the breach of contract claim, Unocal and Brown entered into negotiations. The result was a stipulation. Because of the significance of the stipulation to our decision, we quote it in its entirety:

It is hereby stipulated by and between Union Oil Company of California (Unocal), plaintiff herein, and John Brown E & C, a division of John Brown, Inc. (John Brown), defendant herein, as follows:

1. John Brown's fee for the Kankakee Polymer Plant project was frozen by agreement at $415,000.

2. Unocal paid $302,000 of this fee to John Brown.

3. Unocal retained $113,000 of this fee.

4. John Brown agreed to waive and/or return this $415,000 fee to Unocal after Unocal expressed dissatisfaction with the project.

5. John Brown has failed to credit or return to Unocal $302,000 of this fee.

6. For the period covered by John Brown progress billings dated June 17, 1991 to November 26, 1991, John Brown billed Unocal for reimbursable costs in the amount of $490,000 in connection with the Kankakee project. Unocal withheld payment of this $490,000 to John Brown.

7. The trial court granted partial summary judgment on behalf of John Brown

and held that Unocal's potential recovery in this lawsuit is limited by the contract to 80 percent of its fee.

8.  The court also ruled that a question of fact existed as to whether John Brown reimbursed Unocal any or all of the fee.

9.  Unocal disagrees with the trial court, and intends to appeal.

10.  The parties desire to terminate the litigation in the trial court so as to discontinue incurring additional attorney's fees and expenses and to allow this matter to be taken up on appeal.

11.  It is further stipulated and agreed as follows.

> (a) Unocal agrees to completely offset its claim for reimbursement of the fee by John Brown's claim for reimbursement of its unpaid reimbursable costs, and likewise John Brown agrees to completely offset its claim for unpaid reimbursable costs by Unocal's claim for unreimbursed fees. The parties agree that the mutual offsets result in neither John Brown owing Unocal any money for reimbursement of its fee nor Unocal owing John Brown any money for its claimed unpaid reimbursable costs.
>
> (b) The parties stipulate and agree that in the event the Seventh Circuit affirms the trial court's findings, neither side will attempt to collect from the other, either the unreimbursed fee allegedly owed to Unocal or the unpaid reimbursable costs allegedly owed to John Brown.
>
> (c) In the event that the Seventh Circuit affirms the trial court's ruling, each side agrees to release, acquit and forever discharge the other from any and all claims for alleged unreimbursed fees or costs relating to the Kankakee Polymer Plan project.
>
> (d) Notwithstanding (b) and (c) above, in the event that the Seventh Circuit reverses the trial court's ruling and remands this matter for further proceedings, then this Stipulation shall cease to have any effect whatsoever and cannot be used by either party in the trial court. Furthermore, in the event of a reversal in the Seventh Circuit, neither Unocal nor John Brown waive any of their rights or obligations, and further stipulate and agree that each party shall be entitled to attempt to collect or use as a set-off or recoupment, all provable amounts or damages, including both the alleged unreimbursed fee claimed by Unocal and the alleged unpaid reimbursable costs alleged by John Brown.
>
> (e) It is further stipulated and agreed that the court may enter a final and appealable judgment.

The magistrate judge then ordered "[t]hat judgment is entered in this case resolving all outstanding issues and terminating this case pursuant to (1) the partial summary judgment entered on September 8, 1995, and (2) the terms and provisions set forth in the Stipulation of the parties dated May 30, 1996." The court also concluded that as a prevailing party John Brown was entitled to attorney's fees under the contract up to the date of the partial summary judgment order.

Both parties appeal. Unocal argues that the magistrate judge wrongfully determined that damages were limited under the contract and improperly awarded John Brown attorney's fees; John Brown contends that the court erred in limiting recovery of attorney's fees to those incurred up to September 8, 1995. On appeal, the parties assert that 28 U.S.C. § 1291 provides appellate jurisdiction. Concerned that the magistrate judge's order was not final, we ordered the parties to file supplemental briefs addressing jurisdiction, specifically a line of cases indicating that we lack appellate jurisdiction: *Way v. Reliance Ins. Co.,* 815 F.2d 1033, 1034 (5th Cir.1987); *Horwitz v. Alloy Automotive Co.,* 957 F.2d 1431, 1435 (7th Cir.1992); and *Dannenberg v. Software Toolworks, Inc.,* 16 F.3d 1073, 1075 (9th Cir.1994). The parties maintain the judgment was final and appealable. As the following discussion explains, the judgment was not final and thus this court lacks appellate jurisdiction.

## II.  Analysis

■ Section 1291 provides that "courts of appeal ... shall have jurisdiction of appeals

from all final decisions of the district courts of the United States...." 28 U.S.C. § 1291. Whether a decision is final for purposes of § 1291 generally depends on whether the decision by the district court, or here the magistrate judge " 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 477 n. 30, 98 S.Ct. 2454, 2462 n. 30, 57 L.Ed.2d 351 (1978) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1978)). *See also United States v. Ettrick Wood Prod., Inc.*, 916 F.2d 1211, 1216 (7th Cir.1990) ("This court has jurisdiction over appeals from a district court's final decisions under 28 U.S.C. § 1291. Generally, an order constitutes a final decision if it ends the litigation and leaves nothing to be decided in the district court."). The parties argue that the magistrate judge's order satisfies these requirements.

■ We disagree. Litigants and courts cannot, by agreement, avoid the finality requirement of § 1291. While in this case the parties have settled their dispute, the settlement is not a final one, but a contingent one; if we affirm, the parties will go their own ways, but if we reverse the parties will continue to litigate the dispute. "[T]he fact that the court of appeals could end the litigation does not make a decision on a single issue final." *Massey Ferguson Div. of Varity Corp. v. Gurley*, 51 F.3d 102, 105 (7th Cir. 1995). True, litigation will continue in cases where a court of appeals reverses and remands a case, but in those circumstances the lower court has already ruled on the merits of the case. Here no decision on the merits has occurred.

■ This is a breach of contract suit. There has yet to be a determination of liability; the magistrate judge did not find that John Brown had breached the contract, nor did John Brown admit that it breached the contract. The magistrate judge also did not hold that Unocal owed John Brown reimbursement costs under the contract. (These are the costs that John Brown claims entitle him to a set-off.) Nor did the parties agree that the costs for which John Brown sought reimbursement were due under the contract.

Neither the parties' stipulation nor the magistrate judge's partial summary judgment order ended the "litigation on the merits." Rather, recognizing the high expense of continued litigation, the parties believe it is not worth the fight if this court affirms the district court.

■ More specifically, Unocal does not believe it's worth the fight given the magistrate judge's ruling that its damages will be capped at $332,000, rather than the $8 million it sought in its complaint. (John Brown had relinquished its profit early on, agreeing to forfeit its fee to resolve the dispute.) However, "that an interlocutory order may induce a party to abandon his claim before final judgment is not a sufficient reason for considering it a 'final decision' within the meaning of § 1291." *Livesay*, 437 U.S. at 476, 98 S.Ct. at 2461. In short, the merits were never decided, as required for a judgment to be final. *Livesay*, 437 U.S. at 467, 98 S.Ct. at 2457 (a final judgment "ends the litigation *on the merits*") (emphasis added); *Massey*, 51 F.3d at 105 ("Not until *all* of the elements of a case have been wrapped up is there a final judgment....").

The parties do not dispute that they entered into the stipulation in an attempt to create a final order; in fact, the stipulation expressly states their "desire to terminate the litigation in the trial court so as to discontinue incurring additional attorney's fees and expenses and to allow this matter to be taken up on appeal." This is a noble objective. But like the parties, we too must be concerned with our resources. That is why we, or more aptly Congress, require that a judgment order be final.

The decisions which we suggested the litigants examine support this conclusion. In *Way v. Reliance Insurance Company*, 815 F.2d 1033 (5th Cir.1987), plaintiff had filed a breach of contract claim; the district court granted plaintiff partial summary judgment, concluding that defendant had breached the contract. The parties had agreed to arbitrate damages. Following the district court's determination of liability, the defendants filed an appeal. The Fifth Circuit dismissed the appeal, stating that the partial summary

judgment did not "end the litigation on the merits" pursuant to 28 U.S.C. § 1291 because damages had not been assessed.

*Horwitz v. Alloy Automotive Company,* 957 F.2d 1431, 1435 (7th Cir.1992), is also instructive. In *Horwitz,* the plaintiffs had filed a seven-count complaint against various defendants. The district court granted defendants summary judgment on counts one through four, leaving only counts five through seven pending for trial. The plaintiffs wanted to appeal interlocutorily to this court, but at a status conference the district court indicated that proceeding under Fed. R.Civ.P. 54(b) or § 1292(b) would not likely get the case to the Seventh Circuit because: "I can never get the Seventh Circuit to take an interlocutory appeal." *Id.* at 1438. So instead the attorneys and the district judge tried "to produce an appealable order under Section 1291 . . . ." *Id.* at 1435. They did this by voluntarily dismissing without prejudice counts five through seven, and a pending counterclaim. The district court believed that this created a "a final and appealable order" that we had to take. This court disagreed. We noted that what the district court had done was dismiss "the good counts with leave to later reinstate them so that the counts dismissed for cause could be appealed. That did not terminate the litigation and no one contemplated that it would. It was not a final order." We also noted that "[i]t makes no difference that the court and the parties may have contemplated that, if this court were to accept jurisdiction and affirm the dismissal of counts I-IV, the plaintiffs might later decide not to pursue the voluntarily dismissed counts originally held to have stated a cause of action. What this court might do or not do with an appeal cannot make final an order that was not." *Id.* at 1436.

Similarly, in *Dannenberg v. Software Toolworks Inc.,* 16 F.3d 1073, 1077 (9th Cir.1994), the Ninth Circuit held that it lacked appellate jurisdiction under § 1291 where, following a partial summary judgment, the parties stipulated to dismissing the remaining claim. The stipulation provided that "[i]n the event that any portion of the Order which grants [defendant] summary judgment on plaintiffs' [other] claims . . . is reversed on appeal, plaintiffs may refile any portion of their . . . claim as to which summary adjudication has not been entered in [defendant's favor]." On appeal, the court noted that "the parties stipulated to revive the dismissed claims in the event of reversal on appeal." Because of this, the Ninth Circuit believed that "[i]n essence, the claims remained in the district court pending a decision by this court." It saw "this as a clear, and impermissible, attempt to circumvent Rule 54(b)." It thus concluded that "litigants should not be able to avoid the final judgment rule without fully relinquishing the ability to further litigate unresolved claims . . . ."

■ The parties attempt to distinguish these cases, but while the facts are different their rationale applies equally here. In short, litigants and courts cannot avoid the finality requirement of § 1291 by agreement. *See Dannenberg.* 16 F.3d at 1076 (rejecting " 'the notion that the policies against multiplicity of litigation and against piecemeal appeals may be avoided at the whim of a plaintiff.' ") (quoting *Fletcher v. Gagosian,* 604 F.2d 637 (9th Cir.1979)). To hold otherwise would allow litigants to circumvent the rules that Congress has instructed as to the timing of appellate proceedings. *Swint v. Chambers County Comm'n,* 514 U.S. 35, 44–48, 115 S.Ct. 1203, 1209–1210, 131 L.Ed.2d 60 (1995). The finality requirement in § 1291 evinces a legislative judgment that "[r]estricting appellate review to 'final decisions' prevents the debilitating effect on judicial administration caused by piecemeal appeal disposition of what is, in practical consequence, but a single controversy." *Livesay,* 437 U.S. at 471, 98 S.Ct. at 2459(quoting *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)). See also *Swint,* 514 U.S. at 45, 115 S.Ct. at 1209 ("Section 1291's final decision requirement is designed to prevent parties from interrupting litigation by pursuing piecemeal appeals."); *Way,* 815 F.2d at 1034 ("We, however, sit to settle only controversies fully developed below. We must conserve scarce judicial resources for that purpose."). See also *Digital Equip. Corp. v. Desktop Direct, Inc.,* 511 U.S. 863, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994) (order

vacating a settlement agreement is not immediately appealable under § 1291).

■ That does not mean that litigants are without options. Congress has provided, in appropriate situations, for appeals from interlocutory decisions:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground ʻfor difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order....

28 U.S.C. § 1292(b). "Section 1292(b) of the Judicial Code provides appellate courts with a flexible tool for interlocutory review of complex and controlling questions of law. Interlocutory review is permitted to assure orderly and efficient administration of complex cases." *In re Uranium Antitrust Litigation*, 617 F.2d 1248, 1263 (7th Cir.1980). As the statute states, jurisdiction under § 1292(b) is limited to situations involving "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." However, § 1292(b) also contains two safeguards to prevent imprudent taking of interlocutory appeals. First, an appeal will only be granted if the district court believes that such an issue is involved and says so in writing; and second, the court of appeals agrees to accept the appeal. "This screening procedure serves the dual purpose of ensuring that such review will be confined to appropriate cases and avoiding time consuming jurisdictional determinations in the courts of appeals." *Livesay*, 437 U.S. at 474–75, 98 S.Ct. at 2461–62. It also gives the court of appeals the ability to control its docket—a vital concern given the number of appeals currently taken.

*See, e.g., id.*, 437 U.S. at 475, 98 S.Ct. at 2461 ("The appellate court may deny the appeal for any reason, including docket congestion.").

The parties here did not avail themselves of § 1292, but instead attempted to thwart the screening process and force jurisdiction upon this court. That they cannot do, even if the parties, or the court for that matter, anticipate that we will decline jurisdiction under the normal § 1292 procedure. *Horwitz*, 957 F.2d at 1435 (rejecting the attorneys' and the district judge's attempt "to produce an appealable order under Section 1291....").

There is one last option—*Gillespie v. United States Steel Corp.*, 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964). In Gillespie, the mother of a seaman who had been killed in an accident while working for United States Steel Corporation sued the company on her own behalf and on behalf of her other children. The suit alleged claims of negligence and unseaworthiness. The district court dismissed all of the claims except the mother's claim of negligence. She appealed and the court of appeals affirmed. The Supreme Court then granted her writ of certiorari. In its decision, the Supreme Court noted that jurisdiction existed even though the plaintiff had failed to obtain certification under Rule 54(b) or section 1292(b). 379 U.S. at 152–54, 85 S.Ct. at 310–12. In *Nelson v. Heyne* we read Gillespie to hold that "formal certification by a district judge is not always required in a marginally final case." *Flynn v. Merrick*, 776 F.2d 184, 185 (7th Cir.1985) (quoting *Nelson*, 491 F.2d 352, 354 n. 2 (7th Cir. 1974)). However since then the Supreme Court has clarified that, notwithstanding the broad language, Gillespie must be limited to its unique facts. *Livesay*, 437 U.S. at 477 n. 30, 98 S.Ct. at 2462 n. 30 ("If Gillespie were extended beyond the unique facts of that case, § 1291 would be stripped of all significance."). Following the Supreme Court's lead in *Livesay*, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351, in *Flynn* we concluded that "Gillespie must be given a narrow interpretation if the structure of appellate review established by Congress is to be respected." *Flynn*, 776 F.2d at 185. See also *In re*

*Jartran, Inc.,* 886 F.2d 859, 864 (7th Cir. 1989) (concluding that *Gillespie* exception to the finality doctrine did not apply).

In any event, in their supplemental briefs neither party cited *Gillespie,* much less argued that we extend *Gillespie* in this case. And as we recently stated in *Guaranty National Title Company, Incorporated v. J.E.G. Associates,* 101 F.3d 57, 59 (7th Cir.1996), "[t]hese lawyers knew what they had to do, and they did not do it. Failure in one round of supplemental filings leads us to doubt that a second would be any more successful. Anyway, it is not the court's obligation to lead counsel through a jurisdictional paint-by-numbers scheme."

Because the magistrate judge's order is not final, and the parties did not take advantage of the mechanisms for an interlocutory appeal, we lack jurisdiction. The appeal is accordingly dismissed.