**Edwin C. WEST, Plaintiff–Appellant,**

**v.**

**Phil MACHT, et al., Defendants–Appellees.**

**No. 99–1169.**

United States Court of Appeals, Seventh Circuit.

Submitted* June 23, 1999.

Decided Dec. 1, 1999.

Edwin C. West (submitted), Wisconsin Resource Center, Winnebago, WI, for Plaintiff–Appellant.

Jody J. Schmelzer (submitted), Office of the Attorney General, Wisconsin Department of Justice, Madison, WI, for Defendants–Appellees.

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before CUDAHY, COFFEY, and RIPPLE, Circuit Judges.

CUDAHY, Circuit Judge.

This appeal raises a question of appellate jurisdiction that has produced both inter- and intra-circuit conflict. Edwin West attempts to appeal from an order denying him in forma pauperis (IFP) status as to some of the claims that he has raised in this 42 U.S.C. § 1983 suit but granting him IFP status with respect to other claims. In an attempt to create a final judgment for appeal, West voluntarily dismissed his viable claims without prejudice. Some of our cases suggest that such a dismissal can create a final judgment, but our recent cases hold otherwise. Therefore, we must dismiss this appeal for lack of jurisdiction.

## I.

Edwin West is currently civilly confined as a sexually violent person at the Wisconsin Resource Center in Winnebago, Wisconsin. Prior to his civil confinement he was an inmate at Kettle Moraine Correctional Institution in Plymouth, Wisconsin. West's claims on appeal relate to events surrounding a prison disciplinary proceeding brought against West toward the end of his prison stay.

In July 1995, while incarcerated at Kettle Moraine, West prepared a confidential written statement about "strong arming and drug dealing" by gang members in his cellblock. Complaint ¶ 5. West alleges that Sgt. Audrey Langkabel, a corrections officer, told the gang members that West was making trouble for them. Gang members then provoked him into fights and threatened him during the next few weeks. In August 1995, West sent a complaint to Captain Benjamin Barber alleging that Langkabel had imperiled West's safety by revealing his statement to gang members. Two days later, West was locked up in administrative segregation pending an investigation for lying about corrections staff. On August 29, 1995, Lt. Keith Hell-wig issued a conduct report accusing West of lying about Langkabel.

West received a hearing on the conduct report in September 1995. Captain Barber presided at the hearing. The evidence presented against West included three confidential informant statements that were not sworn or notarized. West claims Barber refused to admit evidence that he tried to submit. West was found guilty of the allegations in the conduct report and sentenced to 360 days in segregation at Waupun Correctional Institution. Later in September, West was dropped from the prison's sex offender treatment program because he could no longer attend classes while in segregation.

West pursued his administrative appeals, but they were unsuccessful. He submitted one of the confidential informant statements used against him to a forensic document examiner, who determined that the statement had been written by Lt. Hellwig, the officer who investigated the allegations leading to the conduct report.

In October 1995, West sought review of the conduct report in Wisconsin Circuit Court and filed a complaint alleging errors in the disciplinary hearing. West claimed error in that confidential informant statements used against him were not sworn or notarized, the hearing officer and the investigating officer were biased, West's lay advocate refused to become involved in his case and he was denied witnesses and documentary evidence. The Circuit Court denied his petition in February 1996. West appealed to the Wisconsin Court of Appeals, which, on December 11, 1996, summarily reversed the conduct report on the issue of the unsworn confidential informant statements, restored good time taken away from him and ordered a new hearing on the conduct report. According to West, the Court of Appeals did not consider the other issues raised in his petition.

With his good time credits restored, West's mandatory release date was De-

cember 5, 1996, six days before the issuance of the appellate court decision. West was not immediately released. He was held in segregation in Waupun until his transfer to the Milwaukee County Jail on January 20, 1997. There he attended a hearing to determine whether probable cause existed to detain him until a civil commitment trial to be held under Wisconsin's Sexually Violent Persons Commitment Act. *See* Wis. Stat. § 980.04. On January 21, 1997, West was transferred to the Wisconsin Resource Center (WRC) pending trial on his civil commitment. West was then found to be a sexually violent person and civilly committed later in 1997.

West received a new hearing on his conduct report while he was at the WRC on February 14, 1997, nearly a month after he was released from prison. Captain Barber came to the WRC to preside over the hearing. West presented the evidence he had available to him from the first conduct hearing, as well as the handwriting analysis. Only the conduct report was put into evidence against him. West was found guilty of the allegations in the conduct report and given the same sentence as before.

West pursued an administrative appeal, which was denied; he then went back to the state courts to challenge the new disciplinary sanction. He raised the same arguments against the new conduct determination that he had at his first hearing. West was denied IFP status on all claims except for a claim that he had been denied witnesses at the hearing. Then the state filed a motion to quash for lack of jurisdiction, because "the respondent, Warden Cook at KMCI, is not the legal holder of plaintiff's records and that [West's] Writ of Certiorari was misdirected." Complaint ¶ 62. The state's motion was granted. West appealed, the jurisdictional dismissal was reversed and the case was remanded back to the Circuit Court. Apparently, after the state filed a response to West's writ, West moved to voluntarily dismiss the state court action because he could not obtain damages.

In December 1998, West filed the § 1983 action that is the subject of this appeal. The complaint alleged seventeen separate violations of his rights grouped into two counts. Count One deals with issues arising from West's criminal confinement; Count Two deals with issues arising from his civil confinement. On December 16, the district court granted IFP status to West on four claims arising from his civil confinement mainly relating to his failure to receive treatment while civilly committed. The district court denied IFP status as to all four of West's claims arising from his criminal confinement. The district court found that three of these four claims (denial of due process at the two prison disciplinary hearings, deliberate indifference by Langkabel to West's safety, and false imprisonment because he was held 43 days beyond his scheduled due date) were precluded by the merits determinations in the state court proceedings. The district court denied leave to proceed on the fourth claim—that West had been denied sex offender treatment after the conduct report was filed against him—because West did not have a liberty interest in receiving treatment. On January 19, 1999, West voluntarily dismissed without prejudice the four claims for which he had received IFP status, and judgment was entered that same day. West then appealed, raising five issues relating to the denial of IFP status with respect to claims relating to his criminal confinement.

## II.

On January 19, 1999, the district court issued a judgment denying IFP as to the claims that are the subject of this appeal and accepting West's voluntary dismissal of the other claims for which he had been granted IFP status. West timely filed his notice of appeal on January 22, 1999, and now asserts appellate jurisdiction under 28 U.S.C. § 1291. West's jurisdictional statement is not correct; this

court does not have jurisdiction over his claims.

■ The district court's judgment dismissing the four claims on which West had been permitted to proceed IFP states that "[p]ursuant to Fed.R.Civ.P. 41(a)(1), plaintiff dismisses voluntarily his claims. . . ." West's voluntary dismissal is without prejudice, because a judgment on a first voluntary dismissal that does not specify whether the judgment is to be with or without prejudice is deemed to be without prejudice. *See* Fed.R.Civ.P. 41(a)(1).

In this case, West wishes to challenge the district court's denial of IFP status as to claims relating to his criminal confinement. Normally, the denial of IFP status is immediately appealable under the collateral order doctrine. *See Roberts v. United States District Court*, 339 U.S. 844, 845, 70 S.Ct. 954, 94 L.Ed. 1326 (1950). However, when IFP status is granted as to some claims against some parties and denied as to other claims against other parties, the denial of IFP is not immediately appealable in the absence of a partial final judgment under Rule 54(b). *See House v. Belford*, 956 F.2d 711, 716 (7th Cir.1992). Thus, West engineered finality by voluntarily dismissing without prejudice the claims as to which he had been granted IFP status. The practical effect of the dismissal is that, if this maneuver is permitted, West may immediately appeal the district court's order insofar as it denied IFP status, and, if he loses this appeal, he may refile the claims on which he was granted IFP status.

This sort of informal attempt to confer legitimacy on an interlocutory appeal meets with mixed approval in the federal courts of appeal; some circuits (including this one) have incurred intra-circuit splits. *Compare Boland v. Engle*, 113 F.3d 706, 714–15 (7th Cir.1997) (dismissing appeal); *Horwitz v. Alloy Automotive Co.*, 957 F.2d 1431, 1433 (7th Cir.1992) (same); *Chappelle v. Beacon Communications Corp.*, 84 F.3d 652, 654–55 (2d Cir.1996) (same; collecting cases); *Mesa v. United States*, 61 F.3d 20, 22 & n. 5 (11th Cir.1995) *with Division 241, Amalgamated Transit Union v. Suscy*, 538 F.2d 1264, 1266 & n. 1 (7th Cir.1976) (per curiam) (allowing appeal); *State ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1105–06 (8th Cir.1999) (same); *Studstill v. Borg Warner Leasing*, 806 F.2d 1005, 1007–08 (11th Cir. 1986) (same). The trend, however, is in the direction of disallowing such appeals, unless the voluntary dismissal has been with prejudice. *See JTC Petroleum Co. v. Piasa Motor Fuels, Inc.*, 190 F.3d 775, 776 (7th Cir.1999); *International Marketing, Ltd. v. Archer–Daniels–Midland Co.*, 192 F.3d 724, 727 (7th Cir.1999); 15A Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice & Procedure* § 3914.8, at 623–26 (2d ed.1992 & Supp. 1999).

It would be an understatement to say that our precedents on this issue are difficult to harmonize. In *Division 241*, the district court granted a motion to dismiss for failure to state a claim as to one of the union's four claims, but denied it as to the union's other three claims. The union then successfully moved to voluntarily dismiss these three remaining claims without prejudice and appealed the claim that had been dismissed under Rule 12(b)(6). We allowed the appeal, though our analysis was perfunctory. *See Division 241*, 538 F.2d at 1266 ("Defendants first argue that the court's order granting their motion to dismiss is not a final order. We disagree because the Union has appealed from the district court's dismissal of Count I, the only remaining count in the case.").

Subsequent cases have, without mentioning *Division 241*, avoided that case's result, though *Division 241* has never been overruled. In *Horwitz*, the district court granted summary judgment on four of the plaintiff's seven claims. The plaintiff did not think it worth proceeding on the remaining claims. So the parties stipulated to the plaintiff's voluntarily dismissing without prejudice his remaining three claims while the defendants did the same

with a pending counterclaim. The plaintiff then appealed the claims on which summary judgment had been granted. We dismissed the appeal, even though the plaintiff would almost certainly not have bothered to refile the voluntarily dismissed claims if the judgment on the appealed claims had been affirmed:

> What Judge Bua did for the parties was to dismiss the good counts with leave to later reinstate them so that the counts dismissed for cause could be appealed.... That did not terminate the litigation and no one contemplated that it would. It was not a final order. It makes no difference that the court and the parties may have contemplated that, if this court were to accept jurisdiction and affirm the dismissal of Counts I–IV, the plaintiffs might later decide not to pursue the voluntarily dismissed counts originally held to have stated a cause of action. What this court might do or not do with an appeal cannot make final an order that was not.

*Horwitz*, 957 F.2d at 1435–36. This court was also strongly critical of a transcript of a status hearing in which the parties and the district court discussed how to position the case so that this court would "have to take" an early appeal. *See id.* at 1438. The panel noted that the transcript read "like the transcript of a meeting of a committee to reform the Civil Rules." *Id.* at 1432–33. Very recently this court considered a case in which the plaintiff manufactured finality by voluntarily dismissing some claims with express permission to refile the dismissed claims in the event the appeal failed. *See* JTC Petroleum Co., 190 F.3d at 776. Once again, the court noted that such an appeal was not permissible.

A related case sheds further light on the current position of this circuit in cases when finality is manufactured by means of a voluntary dismissal. In *Boland*, the plaintiff voluntarily dismissed with prejudice viable claims so that he could appeal claims that had been dismissed pursuant to Rule 12(b)(6). On appeal, the plaintiff suggested that he be allowed to revive his voluntarily dismissed counts in the event of an affirmance. The court refused, noting that the only way that the plaintiff could get an appealable judgment on the dismissed counts was to gamble by dismissing with prejudice his viable counts:

> [A voluntary] dismissal is appealable only if it legally prejudices the plaintiff by "severely circumscrib[ing] the plaintiff's ability to reinitiate his lawsuit." ... Boland was therefore able to get his case into this court only because the District Court agreed to dismiss his entire action with prejudice—something Boland now argues the District Court should *not* have done.
>
> Boland, in short, wanted an immediate appeal and therefore took a calculated gamble.... Now that Boland has lost on appeal, he must live with the consequences of his gamble. Interlocutory appeals are available in the federal courts only under limited circumstances, and we cannot indiscriminately allow plaintiffs to manufacture final decisions as a way around the normal interlocutory rules.

*Boland*, 113 F.3d at 714. *Boland* did leave an opening, however, noting that "courts might bend this doctrine when the choice between complying with the District Court's order and appealing is particularly onerous." *Id.*

But bending the rules to provide jurisdiction is not a move to be undertaken lightly, and the choice that West had to make between dismissing his current claims and waiting to appeal the claims dismissed by the district court seems not so onerous as to require us to revisit the dicta in *Boland*. Nothing in the record suggests that West would be prejudiced by having to wait to appeal the dismissed claims.

The recent cases disallowing a sort of manufactured finality like that found in the present lawsuit are consistent with the fundamental policy disfavoring piecemeal appeals. Hence, West's voluntary dismissal without prejudice is under current law insufficient to create a final judgment. Al-

though West could have asked the district court to enter judgment under Rule 54(b) as to those claims for which he was denied IFP status (the claims he wants to appeal all relate to his criminal confinement, and are distinct from those claims relating to his current civil confinement that were allowed to go forward), he did not do so. In *Horwitz* this court faced the same situation and refused to aid the parties by attempting to conform the judgment to Rule 54(b). *Horwitz,* 957 F.2d at 1434. This refusal is in accord with our practice regarding attempts to appeal from partial judgments not in compliance with Rule 54(b). *See, e.g., United States v. Ettrick Wood Products, Inc.,* 916 F.2d 1211, 1217 (7th Cir.1990) ("Absent proper entry of judgment under Rule 54(b), an order that determines one claim in a multi-claim case, or disposes of all claims against one or more parties in a multi-party case, is not final and appealable."). We therefore do not have jurisdiction to hear this appeal.

APPEAL DISMISSED FOR LACK OF JURISDICTION