ROVNER, Circuit Judge,
with whom HAMILTON, Circuit Judge, joins, dissenting.
In a case charging the defendants with conspiring to rob a fictitious stash house, it is perhaps fitting that our appellate jurisdiction is premised on a fictitious sanction — a dismissal of the indictment that was proposed by the government, and granted by the district court, for the express and sole purpose of facilitating an appeal of a discovery order that the government opposed. The dismissal was nonbinding, to boot, allowing the government to proceed with the prosecution regardless of what we might have to say about the merits of the discovery order. However far Congress may have meant to extend the limits of appellate jurisdiction when it re-wrote the Criminal Appeals Act in 1970, I am confident that this appeal lies beyond those bounds. For all of the prudential reasons that we do not permit civil litigants to manufacture appellate jurisdiction, we should not allow an appeal based on the sort of non-final dismissal that was fabricated here. I must therefore respectfully and regretfully part ways with my colleagues on the matter of our jurisdiction to hear this appeal.
*724 Although the government is nominally appealing the order dismissing the indictment — an order that 18 U.S.C. § 3731 identifies as an appealable order — the government is not actually aggrieved by that dismissal. The government invited the district court to dismiss the indictment solely as a gateway to appellate review of another, interlocutory order — the discovery order — as to which section 3731 does not otherwise permit an appeal. See R. 129 (government’s position paper regarding appeal of selective prosecution discovery order). The district court, in turn, acceded to. the government’s declared intent to challenge the discovery order in this court and dismissed the indictment without prejudice in order to facilitate the appeal. The record leaves no doubt that this was the one and only reason for the dismissal:
AUSA: Your Honor, ... [w]e would suggest to the Court that in light of our non-compliance with the Court’s discovery order, we’re willing to suggest — or, pardon me, to accept dismissal of the indictment as a sanction permitting the government to appeal.
THE COURT: So if I don’t dismiss it, you can never appeal my ruling, is that the idea?
AUSA: I suppose that’s correct, your Honor.
THE COURT: That’s a very attractive proposal.
That’s a very interesting issue, and I think it is an issue that the Seventh Circuit should take a close look at, and I’m sure they will.
And so the indictment is dismissed. ...
R. 144 at 4; see also R. 144 at 6 (court confirms, at government’s request, that the dismissal is without prejudice).
As my colleagues in the majority recognize, this would not be tolerated in the civil context. Ante at 715. Indeed, we have repeatedly disapproved efforts by civil litigants to engineer appellate jurisdiction by inviting the district court to enter a dismissal order that has the veneer of appeal-ability when, in fact, the dismissal is a sham intended to serve solely as the vehicle for what is otherwise an unauthorized interlocutory appeal. See Sims v. EGA Prods., Inc., 475 F.3d 865, 867-68 (7th Cir.2007); ITOFCA, Inc. v. MegaTrans Logistics, Inc., 235 F.3d 360, 363-64 (7th Cir.2000); West v. Macht, 197 F.3d 1185, 1188-90. (7th Cir.1999); JTC Petroleum Co. v. Piasa Motor Fuels, Inc., 190 F.3d 775, 776-77 (7th Cir.1999); Horwitz v. Alloy Auto. Co., 957 F.2d 1431, 1435-36, 1437 (7th Cir.1992); see also Union Oil Co. of Cal. v. John Brown E & C, a Div. of John Brown, Inc., 121 F.3d 305, 308-11 (7th Cir.1997). A civil plaintiff, for example, may be frustrated with an order that disposes of some counts of his complaint but not others, JTC Petroleum, 190 F.3d at 776-77, or which prospectively limits his damages, Union Oil, 121 F.3d at 307. Rather than awaiting a final judgment or seeking the court’s leave to pursue an interlocutory appeal pursuant to 28 U.S.C. § 1292(b), the plaintiff instead asks the court to dismiss what remains of his complaint without prejudice, thereby terminating the litigation in the district court and producing a seemingly final order that would permit him to challenge on appeal any and all of the interlocutory orders preceding that order. See Sims, 475 F.3d at 867-68. Except that the judgment is not final, because it permits the plaintiff to re-file the counts it has persuaded the court to dismiss without prejudice, even if he loses the appeal. E.g., West, 197 F.3d at 1188; JTC Petroleum, 190 F.3d at 776; see also Union Oil, 121 F.3d at 307-08 (parties entered into settlement terminating litigation, contingent upon outcome of appeal). As such, the manufactured dismissal cannot serve as the gateway to *725 review of what the plaintiff is really appealing — an interlocutory order.[1]
The importance of finality has been central to our decisions in these cases. See ITOFCA 235 F.3d at 368-64 & n. 1; West, 197 F.3d at 1188-89; Union Oil, 121 F.3d at 310-11; Horwitz, 957 F.2d at 1435-36, 1437. “Finality as a condition of review is an historic characteristic of federal appellate procedure.” Flanagan v. United States, 465 U.S. 259, 263, 104 S.Ct. 1051, 1053-54, 79 L.Ed.2d 288 (1984) (quoting Cobbledick v. United States, 309 U.S. 323, 324, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940)). Except where Congress has specifically authorized an interlocutory appeal, see 28 U.S.C. § 1292(b), or where the order appealed from falls into the narrow category of collateral order's that are immediately appealable, see Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949), we generally insist that there be a truly final judgment before a disappointed party may appeal the otherwise interlocutory order that has aggrieved him. The requirement of finality serves a number of important prudential concerns:
It helps preserve the respect due trial judges by minimizing appellate-court interference with the numerous decisions they must make in the prejudgment stages of litigation. It reduces the ability of litigants to harass opponents and to clog the courts through a succession of costly and time-consuming appeals. It is crucial to the efficient administration of justice. Firestone Tire & Rubber Co. v. Risjord, supra, 449 U.S. [368], at 374, 101 S.Ct. 669, at 673 [66 L.Ed.2d 571 (1981) ]. For these reasons, “[t]his Court has long held that the policy of Congress embodied in [section 1291] is inimical to piecemeal appellate review of trial court decisions which do not terminate the litigation.... ” United States v. Hollywood Motor Car Co., 458 U.S. 263, 265, 102 S.Ct. 3081, 3083 [73 L.Ed.2d 754] (1982).
Flanagan, 465 U.S. at 263-64, 104 S.Ct. at 1054. See also ITOFCA 235 F.3d at 363-64 & n. 1; West, 197 F.3d at 1189; Union Oil, 121 F.3d at 310. The rationale underlying the final judgment rule is “especially compelling in the administration of criminal justice,” Flanagan, 465 U.S. at 264,104 S.Ct. at 1054 (quoting Cobbledick, 309 U.S. at 325, 60 S.Ct. at 541), given that “the defendant is entitled to speedy resolution of the charges against him,” Will v. United States, 389 U.S. 90, 96, 88 S.Ct. 269, 274, 19 L.Ed.2d 305 (1967) (citing DiBella v. United States, 369 U.S. 121, 126, 82 S.Ct. 654, 658, 7 L.Ed.2d 614 (1962)).
What the government has done in this case to produce an appealable order is precisely what we have deemed forbidden in the civil context. It has engineered a dismissal as the means of obtaining review of an otherwise interlocutory and unap-pealable discovery order. But the dismissal was not final, as it would have been if the district court had dismissed the indictment due to incurable pleading defect, or as a sanction for pretrial delay or some other fault that the government could not cure. See, e.g., United States v. Clay, 481 F.2d 133, 136 (7th Cir.1973) (indictment dismissed based on post-arrest delay in indicting defendant). Nominally, the dismissal was entered as a sanction for the government’s announcement that it did not intend to comply with the court’s discovery order, but only nominally. The dismissal was invited by the government as a means to appeal, and was granted by the district court in deference to that wish; there was never an independent assessment by the *726 district court as to whether dismissal of the indictment was an appropriate sanction on the facts of the case. (If the court had truly intended the dismissal as a sanction, it would have dismissed the indictment with prejudice, as I discuss below.) But because the dismissal was without prejudice, the government retained the ability to re-indict the defendants regardless of what we held in this appeal. As it has turned out, the government has succeeded in its challenge to the discovery order; the dismissal of the indictment is thus being reversed, ante at 723, and on remand, the prosecution will pick up where it left off. But even if we had affirmed the discovery order (and hence the dismissal of the indictment), the government would have been free to return to the grand jury, obtain a second indictment on the same charges, and then comply with the discovery order if and when the court issued it in the new prosecution. Heads the government wins, tails the defendants lose.[2]
It is worthwhile to consider the multiple ways in which allowing an appeal based on the government’s invited dismissal of the indictment without prejudice is contrary to the interests served by the finality requirement and grants to the government what amounts to an advisory opinion on the merits of its opposition to the district court’s discovery order. Such consideration also demonstrates why conditioning this type of appeal on a final judgment — in other words, a dismissal of the indictment with prejudice — would accommodate the government’s interests and at the same time protect the equally important interests of the defendants, the district court, and this court.
First and foremost, by permitting the government to invite dismissal of the indictment, we have allowed it to cut short the proceedings in the district court, and we cannot be sure that those proceedings necessarily would have resulted in dismissal of the indictment had they been permitted to run their course. Recall that the government suggested the dismissal as a “sanction” for its refusal to comply with the discovery order. R. 129 at 1-2 ¶¶ 4, 7; R. 144 at 4. But there was never any meaningful inquiry below into whether dismissal of the indictment actually was the appropriate sanction for the government’s unwillingness to comply with the ordered discovery; the dismissal was asked for and granted solely in order to open the door to this appeal. R. 144 at 4. Had the government instead come into court and said, “Judge, we are unwilling to comply with your discovery order,” period, the court necessarily would have had to commence an inquiry into an appropriate response.
And it is by no means certain that the government’s opposition to the order necessarily would have led the court to dismiss the indictment. The government’s wholesale refusal to comply with a court order is, safe to say, a rare occurrence. I cannot recall it ever happening in my courtroom in my eight years as a district judge. My first response to such a declaration, and I suspect the response of many, if not most judges, would be to explore why the government believed it could not comply with my order — not because I felt bullied by the government’s resistance, but because the rarity of a refusal like this (by a party that shares the court’s obligation to ensure a fair and just proceeding) mer *727 its thoughtful reconsideration. I might have asked whether there was something the government believed I had overlooked in entering the order; and given the opportunity to revisit the order, particularly if I were pointed to the differing results reached by other district judges, I might have reached a different conclusion. (Judge Darrah was among the first of his colleagues in the Northern District of Illinois to issue an order granting a defense request for discovery related to the question of selective prosecution in the stash house cases. By the time the government asked him to dismiss this case more than two months later, other judges had ordered much narrower discovery and had otherwise refused to authorize the broad discovery that he had ordered. See R. 143 at 6-7. Yet, the government did not ask Judge Darrah to reconsider his order in light of those rulings.) I might also have asked the government whether there was any portion of the order, or any aspect of the discovery sought by the defendants, that it would willingly comply with — we are told, after all, that the government has complied with the more modest discovery orders entered in other stash house cases; and I might have asked the parties to start with the agreed upon discovery and see what that produced before deciding whether and how to sanction the government for its opposition to the balance of my order. In short, I might have sought a middle ground between the parties — perhaps something not too different from the incremental approach to discovery that the majority has outlined today — that would have circumvented the impasse and permitted the case to move forward without the interruption that this appeal has occasioned. Cf. In re Blodgett, 502 U.S. 236, 240, 112 S.Ct. 674, 676-77, 116 L.Ed.2d 669 (1992) (faulting government for not asking court of appeals to vacate or modify its order indefinitely staying prisoner’s execution before seeking writ of mandamus from Supreme Court).
Even if the government had persisted in its refusal to comply with some or all aspects of my discovery order, I cannot say that I inevitably would have dismissed the indictment, the weightiest of the penalties available to me. See Barnhill v. United States, 11 F.3d 1360, 1367-69 (7th Cir. 1993) (variously describing entry of judgment, including dismissal with prejudice, as a “draconian,” “severe,” “harsh,” “powerful,” “serious,” and “extreme” sanction for party’s misconduct). Before taking that course, it would have been my obligation to consider not only the egregiousness of the government’s non-compliance but the burden it inflicted on the defendants and the public’s interest in seeing that those who have broken the law are brought to justice. See id. It is entirely possible that I might have chosen a different sanction, and one that might or might not have been immediately appealable, if it was appealable at all. See, e.g., United States v. Moussaoui, 382 F.3d 453, 459-60 (4th Cir.2004) (after inviting briefing as to appropriate sanction for government’s refusal to comply with order granting defendant access to enemy combatant witnesses, district court rejected parties’ shared proposal to dismiss indictment, and instead dismissed death notice and foreclosed certain lines of evidence and argument to government).
Finally, assuming that I did decide to dismiss the indictment as a sanction, I surely would have done so with prejudice. Why, after all, would I leave the option of re-indictment open to the government if I believed that its refusal to comply with my order were serious enough to warrant dismissal of the case? Its sole effect would be to force the government to present its case to a grand jury for a second time, while changing nothing about the nature of *728 the case, the relevance of the discovery I had ordered, or the reasons for the government’s opposition to the discovery order. The second indictment would in all likelihood end up in' my courtroom (see N.D. III. Looal Rule 40.3(b)(2) and N.D. III. Looal Ckim. Rule 1.2), and the parties and I would be back where we started. In short, dismissal without prejudice would resolve nothing. By, contrast, dismissal of the indictment with prejudice would resolve the impasse, and that dismissal would be a genuinely final order that would permit the government to appeal.
Just as we cannot be sure that the district court inevitably would have dismissed the indictment, we cannot be sure that the government would have persisted in its blanket refusal to comply with any part of the court’s discovery order had it been subject to a genuine sanctions inquiry by the district court. When the government suggested dismissal of the indictment without prejudice to the district judge, it was proposing a “sanction” that had a great deal of upside and very little downside for the government. It opened the door to an immediate appeal of the discovery order, and even if the appeal failed and we affirmed the order, all that the government had to do is re-indict the defendants in order to resurrect the prosecution. And that is a modest burden. Among other things, the government runs the show, its burden of proof is relatively low, and, especially in a sting, most of the evidence is in its hands. A grand jury’s refusal to indict is, needless to say, itself a rare occurrence. The ham sandwich aphorism [3] is not too far from the truth. See Tyson v. Trigg, 50 F.3d 436, 441 (7th Cir.1995) (“Instances in which grand juries refuse to return indictments at the behest of the prosecutor are almost as rare as hen’s teeth.”). By contrast, had the district court instead taken it upon itself to decide what sanction was appropriate for the government’s refusal to comply with its discovery order, including potentially a contempt finding or dismissal of the indictment with prejudice, one wonders whether the government might have modified its position and agreed to supply at least some discovery to the defendants. It is one thing to submit oneself to a sanction of one’s own design (and that serves one’s own ends) and very much another thing to defy the district court and face uncertain, and potentially grave, consequences.
All of this shows why the dismissal in this case was a complete fiction as a sanction, and why we are potentially misallo-cating our time to an appeal that might have been obviated by further proceedings in the district court. In short, we have permitted the government and the district court to do exactly what we have forbidden in the civil context: collaborate to produce a sham judgment for the purpose of facilitating review of an otherwise unappeala-ble, interlocutory order, when the finality typically required for such an appeal is entirely absent. See Horwitz v. Alloy Auto. Co., supra, 957 F.2d at 1435-36, 1437. And this is precisely why our opinion is advisory: we are presuming, without knowing, that the discovery order would have remained as broad as it is had the district judge been invited to reconsider the order rather than collaborating to manufacture appellate jurisdiction; we are presuming, without knowing, that the government would have persisted in refusing to comply with the discovery order had the choice of sanction been left up to the district judge; and we are presuming, with *729 out knowing, that the judge would have selected dismissal of the indictment as its sanction after a genuine inquiry.
Apart from authorizing an appeal that might be unnecessary, the court’s jurisdictional determination is inconsistent in several other ways with the concerns animating the finality requirement.
First, in accepting an appeal based on the invited and non-final dismissal of the indictment, we are potentially interfering with the district court’s management of the case by permitting the government to appeal a discretionary, pretrial discovery order that Congress has not identified as one of the interlocutory orders that may be appealed. See Flanagan, 465 U.S. at 263-64, 104 S.Ct. at 1054; ITOFCA, 235 F.3d at 364 n. 1. Gf course, Judge Darrah cannot be heard to complain on that point, given that he willingly entered the dismissal order that paved the way for this appeal. But he is only one of multiple judges in the Northern District of Illinois presiding over similar stash house prosecutions in which the defendants are pursuing claims of selective prosecution; and all of them will now be bound by the discovery framework this court has outlined. There is much to be said for the clarity that this court has brought to that issue. If I agreed that we had jurisdiction over this appeal, I might well be joining the court’s opinion. But the danger in an appellate court reaching an issue prematurely or unnecessarily is that we might make a decision without the illumination that further development in the lower court would have given us, and in doing so hobble the district courts and ourselves with a rulé that will not stand the test of time. That, by the way, is one advantage of mandamus, which permits us to intervene when truly necessary but restricts our role to policing the very outermost boundaries of the district court’s authority, and reserves ample discretion to the trial judges to manage their cases as they see fit. Not incidentally, by accepting this appeal, we are circumventing the limits that mandamus would otherwise impose on disruptive appeals of this type. See Cheney v. U.S. Dist. Ct. for Dist. of Columbia, 542 U.S. 367, 380, 124 S.Ct. 2576, 2586, 159 L.Ed.2d 459 (2004) (“[Mandamus] is a ‘drastic and extraordinary’ remedy ‘reserved for really extraordinary cases.’ ’’) (quoting Ex Parte Fahey, 332 U.S. 258, 259-60, 67 S.Ct. 1558, 1559, 91 L.Ed. 2041 (1947)).
Second, we are placing significant burdens on the defendants by allowing the government to interrupt the litigation in order to pursue the appeal of a non-dispos-itive order. See Flanagan, 465 U.S. at 264, 104 S.Ct. at 1054; ITOFCA 235 F.3d at 364 n. 1. Nominally, the indictment has been dismissed, but because the dismissal was without prejudice, the prosecution of the defendants likely would have resumed regardless of whether we affirmed or reversed the challenged discovery order. In the meantime, while the advancement toward trial has ceased, the defendants have remained under the cloud of unresolved charges.[4] The fact that they have had to post bond in order to secure their release while this appeal is pending is merely one illustration of that fact.[5]
*730 Third, we have burdened the time and resources of first three and now ten judges of this court in order to resolve an issue that later events in the district court might have rendered moot, had we not permitted the government to engineer the dismissal of the indictment. See Union Oil, 121 F.3d at 309 (“[L]ike the parties, we too must be concerned with our resources.”). In short, this appeal has all of the hallmarks of piecemeal appellate litigation that the Supreme Court has cautioned against. Flanagan, 465 U.S. at 263-64, 104 S.Ct. at 1053 — 54; see also ITOFCA, 235 F.3d at 364 n. 1; West, 197 F.3d at 1189; Union Oil, 121 F.3d at 310.
My colleagues nonetheless hold that finality is not required when the government is appealing the dismissal of the indictment, reasoning that because each of the other orders that section 3731 authorizes the government to appeal (orders suppressing evidence, for example) is a non-final order, Congress must have intended to permit the appeal of any order dismissing an indictment, whether final or not. Ante at 716-18. The final judgment rule embodied in section 1291 thus can have no application to government appeals under section 3731, ante at 717-18, which is an interpretation that even the government has not urged upon us.
The argument is somewhat ahistorical, in that Congress originally permitted appeals only from certain orders dismissing an indictment (including dismissals based on defects in the statute underlying an indictment) or otherwise disposing of a case (including an order sustaining a plea in bar), and those orders were indisputably final. 34 Stat. 1246; see United States v. Wilson, 420 U.S. 332, 336-37, 95 S.Ct. 1013, 1018-19, 43 L.Ed.2d 232 (1975) (discussing the original and successor versions of the Criminal Appeals Act). With the 1970 amendments to the Criminal Appeals Act, Congress surely did expand the range of dismissals that were appealable, but it is not obvious that it meant to expand that range so far as to include non-final dismissals, simply because it added other categories of interlocutory orders to the list of decisions that the government can appeal.
More to the point, what this reasoning misses, in my view, is the singular way in which finality concerns come into play when the order deemed appealable by section 3731 is being used as a gateway to review of another interlocutory order that section 3731 does not recognize as appeal-able. For all of the reasons that I have discussed, requiring that such a dismissal be genuine, ie. final, ensures that appellate review of the order underlying the dismissal (here, the discovery order) is consistent with the longstanding prudential concerns underlying the finality rule. In other words, we would have a genuine sanction based on the government’s genuine refusal to comply with the underlying order as to which review is sought. That is precisely the scenario that Congress had in mind when it enacted the 1970 amendments to the Criminal Appeals Act. Although the Act had been modified subsequent to its enactment, the statute in 1970 still authorized appeal from only a limited subset of orders dismissing indictments. See Wilson, 420 U.S. at 336-37, 95 S.Ct. at 1018-19; S.Rep. No. 91-1296, at 2, 5-6 (1970) (Report of Senate Judiciary Committee). While Congress was considering modifications to the statute, the Department of Justice pointed out that the statute as it had been interpreted did not permit the government to appeal dismissals based on grounds other than defects in the indictment or in the statute on which the indictment is based. Id. at 22 (Dep’t of Justice Comments on S. 3132). Thus, for example, the government had no ability to appeal when the district court had dismissed the indictment as a sanction for the *731 government’s refusal to comply with a discovery order that it believed was unauthorized. “In view of the tendency of the courts to expand discovery rights, even beyond those recognized in the Federal Rules of Criminal Procedure, and a growing tendency by courts to dismiss indictments on such grounds, the Government will inevitably be severely handicapped by its inability to appeal such dismissals.” Id. Congress, in turn, broadened the language of section 3731 specifically to accommodate that concern. Id. at 5 (Report of Senate Judiciary Committee). But nowhere in the legislative history is there any hint that Congress thought that discovery orders generally should be appealable and that the government should be free to invite a dismissal of the indictment without prejudice whenever it wished to seek interlocutory review of such orders. That would have represented a dramatic expansion of the government’s appeal rights in and of itself, and an equally dramatic departure from finality principles; and yet nowhere in the history is there any recognition of the competing interests implicated by such a significant step nor any other hint that Congress understood the breadth of the appeal rights it would be granting to the government. There is every reason to think that what Congress meant to authorize when it broadened the relevant language of section 3731 was an appeal from a dismissal entered as a true sanction — that is, a dismissal that was considered, final, and thus dispositive of the case. Permitting an appeal in that instance would address the concern that the government had raised with Congress, while honoring the concerns underlying the finality rule and not granting the government a broad right to appeal discovery orders.
Wilson’s extravagant language' — -that Congress, when it enacted the current Criminal Appeals Act, “intended to remove all statutory barriers to Government appeals and to allow appeals whenever the Constitution would permit,” 420 U.S. at 337, 95 S.Ct. at 1019 — provides only tepid support for the notion that the final judgment rule embodied in section 1291 has no application to government appeals in criminal cases. We have previously cautioned that Wilson’s sweeping declaration cannot be taken literally. See United States v. Spilotro, 884 F.2d 1003, 1005-06 (7th Cir. 1989); United States v. Horak, 833 F.2d 1235, 1246-47 (7th Cir.1987). Wilson dealt with a double jeopardy issue and had nothing whatever to say on the subject of invited dismissals and the final judgment rule. Given the prominent role that the latter rule has long played in criminal as well as civil appeals, see Flanagan, 465 U.S. at 264-65, 104 S.Ct. at 1054-55, I would have expected a clearer signal from Congress that it was jettisoning the finality rule and granting the government a license no other party enjoys — the ability to invite a dismissal and use that as the gateway to appeal an interlocutory order that is otherwise not appealable, all the while reserving the right to proceed with the case even if it loses the appeal.
Likewise, Flanagan’s observation that section 3731 is “a statutory exception to the final judgment rule,” 465 U.S. at 265 n. 3, 104 S.Ct. at 1055 n. 3, quoted ante at 716-17, was actually addressed to the statute’s specific and separate provision permitting appeals from orders suppressing or excluding evidence. The Court was not referring to the entire statute, or to the provision authorizing appeals from an order dismissing an indictment in particular.
Certainly it is true that the Double Jeopardy Clause imposes significant constraints on the government’s ability to take an appeal, ante at 717; see Wilson, 420 U.S. at 352, 95 S.Ct. at 1026, but requiring that a dismissal of an indictment be final before it may be appealed would in no way jeopardize the government’s ability to ex *732 ercise its appellate rights. If the district court decided, after an independent inquiry, that dismissal of the indictment was the appropriate sanction for the government’s refusal to comply with the court’s discovery order — in which case, as discussed, the court would undoubtedly dismiss the indictment with prejudice — then the government would have a truly final order to appeal. Likewise, if the government were so certain of its position that it was willing to invite the dismissal of the indictment with prejudice, it could take ■that course (presuming the district court were amenable), eliminate the need for a sanctions inquiry, and still have a final order of dismissal to appeal. Its willingness to accept such a disposition would be confirmation that the challenged discovery order is, from its point of view, dispositive of the case. Finally, to the extent the government believes that a discovery order is truly beyond the bounds of reason, it always has the option of seeking a writ of mandamus. See, e.g., Spilotro, 884 F.2d at 1006-1007. In any of these three scenarios, we would have either a genuinely final judgment to review or a claim that the discovery order was so beyond the district court’s authority to impose as to warrant interlocutory intervention.
My colleagues do recognize one meaningful limitation on the government’s power to take an immediate appeal of an order with which it does not wish to comply by inviting a dismissal of the indictment without prejudice: the district court’s discretion to decline the invitation. Ante at 718. The government conceded at argument that the district court has this power, and rightly so. In the face of the government’s unwillingness to comply with the court’s order, a judge surely is not bound to accept a sanction of the government’s choosing.
But our recognition that the district court has the discretion to accept or reject an invitation to dismiss the indictment, and thus to open or close the door to an appeal of an order that is otherwise not appeal-able under the terms of section 3731, more than anything else makes clear that we have created a right of appeal that 'Congress itself has not authorized. What we are saying, in effect, is that if the government wishes to take an appeal of an interlocutory order (like a discovery order), it may do so if it is willing to accept a temporary dismissal of the indictment and the district court, in the exercise of its discretion, is willing to go along and dismiss the indictment without prejudice in order to make the appeal possible. In everything but name, this is the criminal equivalent of the discretionary, interlocutory appeal that 28 U.S.C. § 1292(b) authorizes in civil cases. Whatever the merits of such an appeal might be, suffice it to say that Congress has not authorized it. See, e.g., United States v. White, 743 F.2d 488, 493 (7th Cir.1984). (If Congress had authorized it, we no doubt would have been given the same discretion we possess in the civil context not to permit the appeal. Ironically, that is the one point that distinguishes this type of interlocutory appeal from one taken under section 1292(b): so long as the district court in the exercise of its discretion allows the appeal by dismissing the indictment, we have no choice but to accept the appeal.)
The finding of jurisdiction in this case is also inconsistent with the spirit, if not the letter, of our prior decision in United States v. Clay, supra, 481 F.2d at 135-36 (Stevens, J.). The district court in that case had dismissed the indictment based on the government’s eight-month delay in indicting the defendant after he was arrested. On the government’s appeal of that ruling, this court explained that although the district court’s order was properly understood as a dismissal without prejudice, “[o]ur construction of the order *733 does not foreclose appealability.” Id. at 135. Preindictment delay was not a flaw that the government could fix by seeking another indictment from the grand jury: the damage had already been done, and consequently a second indictment would meet the same fate as the first. Id. at 136. The dismissal was, in other words, final and therefore appealable. Id.
My colleagues pooh-pooh the notion that Clay demands finality, ante at 719, but I' have a hard time reading Clay otherwise. It is true that the dismissal order in that case was final, and so, strictly speaking, the court did not have to consider whether a non-final order of dismissal would have been appealable. But the significance of finality to the court’s finding of appellate jurisdiction is hard to miss. Why else would the court have gone out of its way to observe that, although the court’s dismissal of the indictment was properly construed as having been without prejudice, “[that] construction ... does not foreclose appealability,” id. at 135, and then devote several paragraphs to explaining why the order was appealable precisely because it was final, id. at 135-36? Under Clay’s straightforward reasoning, the dismissal of the indictment in this case simply is not final and appealable.
The Supreme Court’s decisions in United States v. Armstrong, 517 U.S. 456, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996), and United States v. Bass, 536 U.S. 862, 122 S.Ct. 2389, 153 L.Ed.2d 769 (2002) (per curiam), by contrast, are utterly silent on the subject of appellate jurisdiction. Certainly it is safe to say that jurisdiction in both cases was assumed, see ante at 718-19, but we are obliged to honor the Court’s express directive not to read jurisdictional holdings into precedents that do not address jurisdiction. See Lewis v. Casey, 518 U.S. 343, 352 n. 2, 116 S.Ct. 2174, 2180 n. 2, 135 L.Ed.2d 606 (1996) (collecting cases).
Moreover, there are reasons to think that the dismissal orders at issue in both Bass and Armstrong were, in contrast to the order at issue here, final. In Bass, the district court had dismissed the government’s notice of intent to seek the death penalty as a sanction for the government’s refusal to comply with the district court’s discovery order. The Sixth Circuit treated the dismissal of the death notice as a partial dismissal of the indictment, which of course section 3731 expressly recognizes as an appealable order. United States v. Bass, 266 F.3d 532, 535-36 (6th Cir.2001); see also United States v. Moussaoui, supra, 382 F.3d at 463 (likewise treating dismissal of death notice as an appealable order and collecting cases). And because the dismissal of the death notice was a genuine sanction that the government could not avoid or undo except by obtaining reversal of the discovery order, the Sixth Circuit expressly labeled the dismissal “a final, appealable order under 18 U.S.C. § 3731.” 266 F.3d at 535 (emphasis mine). As for Armstrong, the Ninth Circuit’s opinion, although it did not expressly engage in a discussion of finality in the same sense we are discussing it here (the court instead was addressing the fact that dismissal of the indictment had been stayed pending appeal), had the following to say on the matter of its jurisdiction:
[T]he appeal is properly before us only because the government knowingly accepted the consequence of opting for an immediate appeal rather than complying with the discovery order. That consequence is that, if we affirm, the dismissal of the indictments must now be implemented unless the order dismissing them is further stayed pending review by the Supreme Court. It is too late for the government to change its mind and comply with the discovery order. Were that not the rule, we would simply be permitting appeals of discovery orders *734 under the guise of dismissal orders that were either only tentative or were never intended to take effect. In either case, we would not have jurisdiction over the appeals under § 3731.
48 F.3d 1508,1510 (9th Cir.1995) (en banc). This discussion reads very much as if the Ninth Circuit did not believe the option was open to the government, as it was here, to re-indict the defendants and belatedly comply with the district court’s order in the event the government lost the appeal. Perhaps that reads too much into the court’s language. But so long as we are talking about why the Supreme Court “may have let the issue [of jurisdiction] pass” in silence, ante at 719, it is worth pointing out that the Court in Armstrong may have thought the dismissal order was a genuinely final order.
For these and all of the other reasons set forth in the panel’s opinion, 766 F.3d 722, I respectfully dissent from the court’s holding that we have jurisdiction over the government’s appeal in this case.

. Cf. JTC Petroleum, 190 F.3d at 776-77 (finding appellate jurisdiction only after plaintiff agreed to treat dismissal of remaining counts as having been granted with prejudice).

. See ITOFCA, 235 F.3d at 364 (noting that dismissal of counterclaims without prejudice permitted defendant to re-file them at any time, and regardless of what transpired on appeal); West, 197 F.3d at 1188 ("The practical effect of the dismissal [of claims on which plaintiff was granted in forma pauperis status] is that, if this maneuver is permitted, West may immediately appeal the district court's order insofar as it denied IFP status, and, if he loses the appeal, he may refile the claims on which he was granted IFP status.").

. Thirty years ago, Solomon Wachtler, then Chief Judge of the New York Court of Appeals, famously remarked that prosecutors could convince a grand jury to "indict a ham sandwich” if that is what they wanted. See Marcia Kramer & Frank Lombardi, New top state judge: Abolish grand juries & let us decide, N.Y. Daily News, Jan. 31, 1985, at 3.

. I recognize that none of the defendants objected to the dismissal of the indictment, see R. 144 at 6-7, but then of course they might have anticipated, particularly in light of United States v. Clay, supra, 481 F.2d at 135-36, that we would not permit the appeal of a non-final dismissal of the indictment without prejudice. That, indeed, has been their position throughout the course of this appeal.

. For purposes of pretrial release, when the government takes an appeal pursuant to section 3731, 18 U.S.C. § 3143(c) requires the district court to treat the defendant as if the case were still active and apply the criteria set forth in 18 U.S.C. § 3142.